IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MAUREEN CALL,                                            CV 04-744-MA

      Plaintiff,                                  OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

      Defendant.


SHARON MAYNARD
Swanson, Thomas & Coon
820 S.W. Second Avenue, Suite 200
Portland, OR 97204
(503) 228-5222

      Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1053

1 - OPINION AND ORDER

RICHARD A. MORRIS
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2156

    Attorneys for Defendant

MARSH, Judge.

Plaintiff filed a civil action for judicial review of a final decision of the Commissioner denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.  Plaintiff alleges the Administrative Law Judge (ALJ) erred in finding she is not entitled to benefits. Plaintiff seeks an order reversing the Commissioner's decision and remanding the case for further proceedings.  The Commissioner contends her decision is based on substantial evidence and is free from legal error.  The Commissioner, therefore, requests the Court to affirm her decision.

This court has jurisdiction under 42 U.S.C. § 405(g).  For the following reasons, the Court AFFIRMS the final decision of the Commissioner and DISMISSES this action.

## BACKGROUND

Plaintiff applied for DIB and SSI on December 12, 2001, alleging the onset of disability as of August 15, 2001.  The application was denied initially and on reconsideration.

Plaintiff requested a hearing, which was held on December 18, 2003. On January 28, 2004, the ALJ issued a decision that plaintiff was not entitled to a period of disability and was not eligible for SSI. Plaintiff appealed the denial of benefits to the Appeals Council. On April 12, 2004, the Appeals Council affirmed the ALJ's decision and, therefore, that decision became the final decision of the Commissioner for purposes of judicial review.

## **LEGAL STANDARDS**

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.

3 - OPINION AND ORDER

1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## **DISABILITY ANALYSIS**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 416.920.

4 - OPINION AND ORDER

The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at Step One, the ALJ found plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability. 20 C.F.R. § 416.920(b).

At Step Two, the ALJ found plaintiff suffers from degenerative disc disease of the lumbar spine and chronic low back pain that are severe physical impairments within the meaning of 20 C.F.R. §§ 404.1520©) and 416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments did not meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(iii) and (d), and § 404.920(a)(4)(iii) and (d). The ALJ found plaintiff had non-exertional limitations that would not preclude her from performing a full range of work involving sedentary and light exertion.

At Step Four, the ALJ found plaintiff is able to perform her past relevant work as a dispatcher for road service calls and hairstylist, or, in the alternative, there are a significant

5 - OPINION AND ORDER

number of jobs in the national economy that plaintiff can perform at sedentary or light exertional levels.

Accordingly, the ALJ found plaintiff was not under a disability. 20 C.F.R. §§ 404.1520(f) and 416.920(f).[1]

## DISCUSSION

As of the date of the final decision, plaintiff was 35 years old. She has a college education. Plaintiff alleges she is disabled, and that the ALJ erred by failing to (1) find plaintiff's herniated disc was a severe impairment, (2) credit plaintiff's testimony regarding her complaints, (3) include all of plaintiff's limitations in the residual functional capacity determination, and (4) develop a further record regarding functional limitations caused by plaintiff's impairment.

**1. Herniated Disc.**

In April 2002, after plaintiff filed her disability application, she was examined by Peter Schludermann, M.D. He diagnosed low back and neck pain, tension headaches, knee and wrist pain, and left trochanteric bursitis with moderate tenderness, and noted plaintiff's range of motion was "normal, with some mild exceptions." Dr, Schludermann also diagnosed alcoholism with a likely history of alcoholic hepatitis and possible ascites (accumulation of fluid in the abdomen,

---

[1] The ALJ must address Step Five only if he finds plaintiff is unable to perform her past relevant work.

frequently caused by alcohol abuse).

In February 2003, plaintiff slipped and fell. An X-ray taken at the emergency room showed no acute injury. Following the injury, Plaintiff began treating with Valerie Krause, M.D., for complaints of severe left lower back pain radiating to her buttocks and down the back of her leg, and right knee strain. Dr. Krause prescribed vicodin and ibuprofen for pain.

In April 2003, however, an MRI revealed a large disc herniation at L5-SI. Based on the MRI, Dr. Krause referred plaintiff to neurosurgeon David E. Adler, M.D., for consultation regarding the pain radiating from plaintiff's lower back down the left leg. Dr. Adler concluded the herniated disc caused plaintiff's pain but that plaintiff was not a candidate for surgery because the pain level was improved. Plaintiff was seen by Dr. Adler again in May 2003, at which time Dr. Adler noted plaintiff complained her neck pain was often worse than her back pain.

Through June and August 2003, Dr. Krause continued treating plaintiff, noting that plaintiff continued to have mild tenderness and radiating pain in the left low back, which was improving. Plaintiff continued to complain of chronic neck pain.

In his decision denying plaintiff's claim, the ALJ did not make a specific finding that Plaintiff's herniated disc was a separate impairment. Plaintiff contends the ALJ's failure to

do so was error, because such a separate finding was necessary before the ALJ could make a reasonable determination of plaintiff's residual functional capacity. I disagree.

The ALJ addressed in detail the medical records and doctors' opinions regarding plaintiff's neck, low back, leg and knee pain and found in Step Two of his evaluation that she had severe impairments including degenerative disc disease of the lumber spine. Although the ALJ never specifically referred to plaintiff's herniated disc as a severe impairment standing alone, it is clear from the record as a whole that, at Steps Three and Four, he considered the medical records pertaining to the herniated disc in finding that (1) the combination of plaintiff's impairments did not equal any listed impairment and (2) plaintiff had the residual functional capacity to perform her past relevant work.

On this record, I conclude the ALJ did not err in the manner in which he considered the effect of plaintiff's herniated disc on her ability to engage in substantial gainful activity.

**2. Crediting Plaintiff's Testimony.**

Plaintiff asserts the ALJ failed to give valid reasons for not crediting plaintiff's statements and testimony regarding the severity of her pain and the extent to which it effected her daily activities. The ALJ found plaintiff was not entirely credible based on inconsistencies in her answers to

8 - OPINION AND ORDER

questionnaires and testimony, and inconsistencies between her testimony and answers to questionnaires by her fiancee, Mike Love. The inconsistencies included her history of alcohol use.

      a.  <u>Plaintiff's Evidence</u>.

In April 2002, plaintiff completed pain and daily living activity questionnaires to support her disability application.

Plaintiff described her pain as "headaches, severe pressure on neck, aching, numbness, piercing pain, like stabbing." The pain "never goes away," only "subsides now and then," and is made worse by "anything physical, and stress." Plaintiff would "self-medicate" to make the pain subside. As of that date, plaintiff was not taking pain medication.

Plaintiff's daily living activities included living with her son and, with his help, preparing meals and doing some shopping, vacuuming and laundry. She listened to the radio but did not watch much television. Plaintiff did not need help with personal needs and grooming. Plaintiff stated that before her disabling condition began she did "everything from snow skiing, camping to yardwork."

In November 2002, plaintiff described her pain as "burning, aching, throbbing, some areas sore to the touch." The pain was "gradually getting worse" since 1997. "Stress, anxiety, trying to work or function and perform tasks" makes the pain

worse, and "nothing that I know of" makes it better.  At this time, plaintiff had just begun taking pain medications, including ibuprofen and vicodin.

Plaintiff stated her daily activities then included living with her son and daughter.  By now, she did need occasional help bathing and frequent help dressing.  On a daily basis, plaintiff did some laundry, cleaned dishes, swept, and cleaned counters.  The amount of housework she was able to do was less than the year before and "nothing compared to two years ago."  Plaintiff now listened to the radio up to 12 hours a day and watched television 1-3 hours a day.  Plaintiff no longer tried other activities because of "lack of desire and motivation for fear of reprocutions (sic)."

In her testimony at the hearing held in December 2003, Plaintiff described her major complaint as pain "all over" her body, but "mainly, my wrists, my right knee, my lower back" and "into my shoulders."  The pain is worse during the winter months.  It increased in her lower back and left leg after she slipped and fell in February, 2003.  Plaintiff testified her pain level on a 10-point scale ranges between 7-8.  Plaintiff stated that when she took prescribed pain medications, the pain level was between 5-6, but she did not take the medication because they made her sick and sleepy, which prevented her from going anywhere or doing anything.

10 - OPINION AND ORDER

As for physical activities, plaintiff testified she was only able to sit for a few minutes, stand in one place for up to ten minutes, and walk for two blocks before she needs to sit down.  She was unable to lift a gallon of milk without feeling like "something's going to break" in her lower back.  She did not do any vacuuming or mopping because it required her to bend over.  She did some laundry and cleaned counter tops.

Plaintiff testified that she has an arrangement with Love to help around the home and also around the farm located on the same property.  She does the work in exchange for free rent.

Plaintiff testified that she drank heavily until about 1995 or 1996 when she last owned a hair salon.  As of November 2003, however, plaintiff testified she had not had a drink for about one year.

At different times, plaintiff stated she was "clean and sober" for five years, or she had one year of sobriety.  She also stated, at one time or another, that either her son alone or both her son and daughter lived with her.

    b.  <u>Love's Evidence</u>.

In April 2002, Love completed a daily activities questionnaire regarding plaintiff.  At that time he saw plaintiff 1-2 times a weeks.  Plaintiff was living with her son.  He stated that plaintiff "tries to do something everyday but often comes home soon after with a bad neck and head ache for the rest of the

day."  "About the only place" plaintiff goes to is the grocery store.  Plaintiff can drive but "not for very long" because her neck gets stiff."  Love and plaintiff used to go for walks but the jaring (sic) of steps agravates (sic) her neck and joints."  Plaintiff gets no other form of exercise.  Plaintiff uses the internet for short periods of time but her "arms and neck bother her."  Plaintiff sleeps 4-6 hours a night and takes hour-long naps 1-3 times a day.  Plaintiff prepares good meals daily and performs chores around the house sometimes on her own and "promply (sic) as needed."  Love stated that "on a good day [plaintiff] tries to get daily chores that have built up done.  Most days she is in a lot of pain and sits around a lot."

In May 2002, in a questionnaire regarding plaintiff's drug and alcohol use, Love stated plaintiff had been clean and sober "as long as I have known her."

In November 2002, Love completed a second daily activities questionnaire.  He stated he saw plaintiff at least five times a week.  Plaintiff had kids living with her.  Plaintiff would go to the grocery store every other day and shopped at other stores 1-2 days a week.  Plaintiff could no longer play badminton or walk very far.  She watched television 2-4 hours a day.  She drove "as little as possible [because] it bothers her wrists, elbows, and back."  Plaintiff did not take walks.  Plaintiff would get exercise by cleaning her house.  She would do the laundry 1-2

times a week, dust the house monthly, and vacuum weekly. She does these chores well "with some help" but her arms and neck "bother her." She has a pet that she takes care of adequately. At this time, she was taking medications on a daily basis. Love was not sure whether plaintiff had any side effects from the medication. Her sleep pattern was substantially the same as it was in May.

In a second drug and alcohol questionnaire, Love repeated his previous answers that plaintiff was clean and sober as long as he had known her.

   c.  Standards as to Credibility Findings.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" (the *Cotton* test). Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The claimant need not produce objective medical evidence of the symptoms or their severity. Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996). Here, plaintiff presented objective medical evidence of underlying impairments to her neck and low back and right knee.

Where, as here, plaintiff has met the standards set out in the *Cotton* test and there is no affirmative evidence to

suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283. To determine whether plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

        d.   Analysis.

The Commissioner asserts that although the ALJ rejected plaintiff's testimony regarding the extent of her physical limitations, he did credit it to the extent he found she was limited to sedentary to light work.

For the reasons stated below, I find the ALJ properly credited plaintiff's testimony to the extent he found she had some limitations in her ability to work. In addition, on the record as a whole, the ALJ gave clear and convincing reasons why he did not "entirely" credit plaintiff's testimony regarding the extent of the pain she was in and the extent of interference in

her daily activities caused by the pain.

The ALJ reasonably found that plaintiff's activity in cleaning house and helping around the farm to help pay the rent requires "significant levels exertion" and is inconsistent with plaintiff's claimed work limitations.

The ALJ also reasonably found that plaintiff's testimony regarding her use or lack of use of prescribed medications was inconsistent with the level of pain she claimed, and was not fully compliant with treatment advice from her physicians.

The medical records provided by both Drs. Krause and Adler from May-July 2003, only six months before plaintiff testified, are also somewhat inconsistent with plaintiff's evidence that her condition worsened over time. They reflect that plaintiff's lower back pain was improving and, at least during one examination, plaintiff did not appear to be in acute distress.

In summary, on this record, I find the ALJ did not err in not crediting all of plaintiff's evidence regarding the extent of pain she was suffering, and the impact of the pain on her daily activities.

   3. **Residual Functional Capacity Determination**.

Plaintiff contends the ALJ ignored information provided by her boyfriend, Mike Love regarding limitations in her daily

activities. For the reasons stated above, I find that ALJ fully considered the evidentiary record, including the evidence presented by plaintiff and Love regarding plaintiff's physical limitations and made a finding regarding plaintiff's residual functional capacity that was supported by substantial evidence in the record as a whole.

**4. Further Development of Record.**

Plaintiff contends the case should be remanded to the ALJ to further develop the medical evidence regarding the effect of plaintiff's impairments on her residual functional capacity. Specifically, plaintiff asserts the record is inadequate because none of the physicians who examined plaintiff presented an opinion as to the functional limitations plaintiff would experience from those impairments. I disagree.

As noted, plaintiff had the initial burden of proof through Steps One through Four of the disability evaluation that her residual functional capacity was limited to the extent she could not perform her past relevant work. Tackett, 180 F.3d at 1098. Only if plaintiff met that burden did the burden shift to the ALJ in Step Five to show that plaintiff had the residual functional capacity to engage in other substantial gainful activity. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Id. See also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)(ALJ's duty to develop the record further is triggered if the evidence

is ambiguous or if the record is inadequate to allow for proper evaluation of the evidence).  Otherwise, the ALJ has the discretion to seek additional medical evidence.  20 C.F.R. § 404.1527(f)(2)(iii)(An ALJ "may also ask for and consider opinions from medical experts on the nature and severity of your impairments.").

Here, the evidence in the record as a whole was sufficient for the ALJ to make a determination that plaintiff was able to perform her past relevant work and, therefore, it was not an abuse of discretion for the ALJ not to obtain medical opinions on that issue.

Accordingly, I find the ALJ did not err in failing to develop the medical record further.

## **CONCLUSION**

For these reasons, the final decision of the Commissioner is AFFIRMED; this action is DISMISSED.

IT IS SO ORDERED.

DATED this 24 day of October, 2005.

                                            _/s/  Malcolm F. Marsh_____
                                            MALCOLM F. MARSH
                                            United States District Judge